**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHAEL SESSA,

    *Plaintiff,*

v.

ABLETO, INC.,

    *Defendant.*

Case No. 8:23-cv-02219-TPB-CPT

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................................1

II.  FACTUAL BACKGROUND.............................................................................................2

    A.  Procedural History ...................................................................................................2

    B.  Summary Of The Settlement Terms.........................................................................3

        1.  Settlement Class ................................................................................................3

        2.  Settlement Consideration...................................................................................4

        3.  Notice Program..................................................................................................4

            a.  Email Notice .............................................................................................5

            b.  Postcard Notice.........................................................................................5

            c.  Settlement Website & Toll-Free Telephone Number ...............................6

        4.  Claims Process...................................................................................................6

        5.  Allocation of the Settlement Fund Payments.....................................................7

        6.  Opt-Out Procedures...........................................................................................8

        7.  Objection Procedures .........................................................................................8

        8.  Release of Claims..............................................................................................9

        9.  Class Counsel Fees and Expenses ...................................................................10

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL .....................10

    A.  The Proposed Class Should be Certified ...............................................................10

        1.  Numerosity.......................................................................................................11

        2.  Commonality....................................................................................................11

        3.  Typicality.........................................................................................................11

        4.  Adequacy.........................................................................................................12

        5.  Predominance and Superiority.........................................................................13

    B.  The Settlement Satisfies the Criteria for Preliminary Approval............................13

        1.  The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations...................................................................................................15

        2.  The Settlement is Fair, Adequate and Reasonable..........................................16

            b.  Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair, Adequate and Reasonable ...................................17

            c.  Complexity, Expense and Duration of Litigation...................................18

            d.  The Substance and Amount of Opposition to the Settlement .................19

            e.  Stage of Proceedings ..............................................................................19

    A.  The Court Should Approve the Proposed Notice Program .....................................19

    B.  Proposed Schedule of Events .................................................................................20

IV.  CONCLUSION................................................................................................................21

i

## TABLE OF AUTHORITIES

### CASES

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) ···················································································· 10

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.,*
211 F.R.D. 457 (S.D. Fla. 2002) ································································· 13

*Babineau v. Fed. Express Corp.,*
567 F.3d 1183 (11th Cir. 2009) ·································································· 12

*Behrens v. Wometco Enterprises, Inc.,*
118 F.R.D. 534 (S.D. Fla. 1988) ································································· 17

*Bennett v. Behring Corp.,*
737 F.2d 982 (11th Cir. 1984) ··················································· 13, 14, 19

*Berry v. Refresco Bevs. United States Inc.,*
2025 U.S. Dist. LEXIS 110902 (M.D. Fla. June 11, 2025) ····················· 14

*Bonner v. City of Prichard,*
661 F.2d 1206 (11th Cir. 1981) ·································································· 15

*Busby v. JRHBW Realty, Inc.,*
513 F.3d 1314 (11th Cir. 2008) ·································································· 12

*Carriuolo v. GM Co.,*
823 F.3d 977 (11th Cir. 2016) ··································································· 12

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977) ·············································selected 15, 17

*Couser v. Comenity Bank,*
125 F. Supp. 3d 1034 (S.D. Cal. 2015) ······················································ 18

*Diakos v. HSS Sys., LLC,*
2016 U.S. Dist. LEXIS 189153 (S.D. Fla. Feb. 4, 2016) ························· 19

*Diakos v. HSS Systems, LLC,*
137 F. Supp. 3d 1300 (S.D. Fla. 2015) ······················································ 10

*Facebook, Inc. v. Duguid,*
592 U.S. 395 (2021) ····················································································· 2

*Francisco v. Numismatic Guaranty Corp. of America,*
2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ················································· 16

ii

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011) ·················································· 14

*In re Mid-Atl. Toyota Antitrust Litig.*,
  564 F. Supp. 1379 (D. Md. 1983)················································· 14

*Kilgo v. Bowman Trans.*,
  789 F.2d 859 (11th Cir. 1986) ···················································· 11

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ··················································· 13

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ··················································· 11

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ······················· 10, 15, 17, 19

*Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*,
  221 F.3d 1235 (11th Cir. 2000)··················································· 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)································································· 20

*Murray v. Auslander*,
  244 F.3d 807 (11th Cir. 2001) ···················································· 11

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ·········································· 17

*Rose v. Bank of Am. Corp.*,
  2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014)··················· 18

*Singer v. AT&T Corp.*,
  185 F.R.D. 681 (S.D. Fla. 1998) ·················································· 10

*Twigg v. Sears, Roebuck & Co.*,
  153 F.3d 1222 (11th Cir. 1998) ··················································· 20

*Valley Drug Co. v. Geneva Pharms., Inc.*,
  350 F.3d 1181 (11th Cir. 2003) ··················································· 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)································································· 11

STATUTES

47 U.S.C. § 227 ···································································································· 2

OTHER AUTHORITIES

Manual for Complex Litigation § 1.46 at 62, 64-65 (1982) ···················· 14, 19, 20

Newberg on Class Actions (5th ed. 2016) ············································· 14

RULES

Fed. R. Civ. P. 23(a) ·························································································· 10

Fed. R. Civ. P. 23(b) ···················································································· 10, 13

Fed. R. Civ. P. 23(b)(1) ······················································································ 19

Fed. R. Civ. P. 23(b)(2) ······················································································ 19

Fed. R. Civ. P. 23(b)(3) ················································································· 19, 21

Fed. R. Civ. P. 23(e) ····················································································· 13, 21

Fed. R. Civ. P. 23(e)(1)(B) ·················································································· 19

Fed. R. Civ. P. 23(e)(2) ······················································································ 14

Fed. R. Civ. P. 23(e)(3) ······················································································ 14

Fed. R. Civ. P. 30(b)(6) ······················································································ 16

### PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Michael Sessa ("Plaintiff" or "Class Representative"), with the consent of Defendant AbleTo, Inc. ("Defendant" or "AbleTo"), respectfully requests the entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement Agreement" or "Agreement"), certifying a class for settlement purposes, and providing for issuance of Notice to the Settlement Class.[1]

## I.    INTRODUCTION

The Settlement Agreement provides for twenty-three dollars ($23.00) to each Settlement Class Member who submits a timely, valid, and verified Claim Form. Additionally, Defendant (1) will pay Administration Costs not to exceed $535,000 and (2) will not oppose Plaintiff's forthcoming motion for an award of Attorney's Fees and Costs not to exceed $1,625,000. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious litigation centered on unsettled legal and factual questions.

This motion seeks entry of an order providing for:

1.   Preliminary Approval of the Settlement;

2.   Preliminary certification of a Settlement Class, appointment of the Plaintiff as Class Representative, and appointment of Plaintiff's counsel as Class Counsel;

3.   Approval of American Legal Claim Services, LLC as the Settlement Administrator;

4.   Approval of the Notice program describing:

  a.   The Settlement and the Settlement Class Members' rights with respect to the Settlement;

  b.   The proposed Release of claims;

  c.   The procedure for filing a claim; and

---

[1] The Agreement is attached as Exhibit 1. All capitalized terms used herein have the same definitions as those defined in the Agreement.

1

     **d.** The procedure for opting-out of or objecting to the Settlement;

  **5.** Approval of the Claims process; and

  **6.** The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is fair and well within the range of Preliminary Approval for several reasons. *First*, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendant's ability and willingness to continue its vigorous defense of the case. *Second*, the parties reached this Settlement only after first engaging in pre-litigation discovery, numerous rounds of formal discovery, extensive motion practice, and extensive arm's-length negotiations. *Third*, the Settlement is not conditioned on any amount of attorneys' fees for Class Counsel which speaks to the fundamental fairness of the process.

For all these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    FACTUAL BACKGROUND

Congress passed the Telephone Consumer Protection Act ("TCPA") "to address 'the proliferation of intrusive, nuisance calls' to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021). Defendant provides mental health services to consumers. As a provider of mental health services, Defendant sent prerecorded voicemails to Plaintiff and approximately 1,373,344 individuals in total (the "Potential Settlement Class Members") informing the Potential Settlement Class Members of its services.

### A.  Procedural History

On September 29, 2023, Plaintiff filed his Complaint against Defendant before this Court, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. (Doc. 1). On December 22, 2023, Defendant filed its Answer. (Doc. 26). On January 15, 2024, and January 26, 2024, Plaintiff and Defendant respectively filed Answers to the Court Interrogatories. (Doc. 29, 30). On February 1,

2

2024, the parties attended a mediation before Emmett L. Battles and reached an impasse. (Doc. 33). On February 26, 2024, Defendant filed a supplement to its Court-ordered Interrogatories. (Doc. 39).

On September 4, 2024, Plaintiff filed a Motion to Compel Discovery. (Doc. 49). Defendant filed its Response in Opposition on September 18, 2024. (Doc. 51). Both parties attended the hearing on Plaintiff's Motion to Compel on October 22, 2024. (Doc. 59).

On January 17, 2025, Plaintiff filed a Motion for Class Certification. (Doc. 70). Defendant filed its Response in Opposition on February 7, 2025. (Doc. 79). On February 13, 2025, both parties filed Cross-Motions for Summary Judgment. (Doc. 81, 83). On March 6, 2025, both parties filed Responses in Opposition to each other's Motions for Summary Judgment. (Doc. 95, 97). On March 20, 2025, both parties filed a Reply in Support of their respective Motions for Summary Judgment (Doc. 106, 108) and Plaintiff filed a Motion to Designate an Expert. (Doc. 110). Additionally, on March 20, 2025, the parties attended mediation with mediator Rodney Max, Esq. but were unable to reach an agreement at that time. (Doc. 119). On March 24, 2025, Plaintiff filed his Reply in Support of his Motion for Class Certification. (Doc. 116). That same day, the parties filed a Joint Motion to Stay (Doc. 115), which the Court granted until June 16, 2025. (Doc. 117). On April 2, 2025, Defendant filed its Opposition to Plaintiff's Motion to Designate an Expert. (Doc. 122).

On May 15, the parties attended another mediation with mediator Rodney Max, Esq. On May 30, 2025, the parties filed a Joint Notice of Settlement. (Doc. 125). The Court subsequently lifted the stay and directed the parties to file the instant motion for preliminary approval of the class action settlement by July 15, 2025. (Doc. 126). On July 15, 2025, the parties filed a stipulation to extend that deadline until August 8, 2025 (Doc. 129).

### B.  SUMMARY OF THE SETTLEMENT TERMS

#### 1.  Settlement Class

The proposed Settlement establishes a single Settlement Class as follows:

All current or former Aetna members within the United States who, within the four years prior to the filing of the Complaint, received a prerecorded voicemail from Defendant on their cellular telephone.

*See* Agreement § I.EE. Excluded from the Settlement Class are: (1) the district judge and magistrate judge presiding over this case, their spouses, and persons within the third degree of relationship to either of them; (2) individuals who are or were during the Class Period agents, directors, employees, officers, or servants of Defendant or of any affiliate or parent of Defendant; (3) Plaintiff's counsel and their employees; and (4) all persons who file a timely and proper request to be excluded from the Settlement Class.

### 2. Settlement Consideration

Pursuant to the Settlement and the Releases set forth in Section V of the Agreement, Defendant has agreed to compensate Settlement Class Members $23.00 each. *See* Agreement § II.B.1. These payments are contingent upon the Settlement Class Members completion of a timely, valid, and verified Claim Form. *Id.* Additionally, Defendant will pay administration Costs not to exceed $535,000 (Agreement § III.A.).

### 3. Notice Program

Pending this Court's approval, American Legal Claim Services, LLC (ALCS) will serve as the Notice Administrator, and will be responsible for administrating the Notice Program. The Notice Program consists of: (1) Email Notice; and (2) Postcard Notice. *See* Agreement § III.B. The forms of the proposed Email Notice and Postcard Notices agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits B-D.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or "opt-out" of

4

the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement; a Toll-Free Settlement Telephone Hotline; and other important documents.

### a. Email Notice

The primary form of notice shall be through email. A copy of the Email-Mail Notice is attached to the Settlement Agreement as Exhibit B. Individuals who receive Email Notice will have the option of mailing in the Claim Form or visiting the Settlement Website to download and file a Claim Form. Agreement § III.B.2. Email notices will be sent to all persons in the Settlement Class who may reasonably be identified and as to whom Defendant has an email address or which the Administer is able to identify. Emails sent shall have a "return receipt" or other such function that permits ALCS to reasonably determine whether e-mails have been delivered and/or opened. Emails shall have a hyperlink that class member recipients may click and be taken to a landing page on the settlement website. Each class member will be provided a unique class member identifier on the notice which will be used to access the claim form.

### b. Postcard Notice

For persons in the Settlement Class for which email is not available, Defendant will first determine whether it has a mailing address associated with the telephone and/or account number, and ALCS will send postcard notice to those persons. For those persons for whom Defendant has not located a mailing address, ALCS will conduct a reverse lookup to determine the person's mailing address and send postcard notice to those persons. Agreement § III.B.2. A copy of the Postcard Notice is attached to the Settlement Agreement as Exhibit D.

Email Notice and Postcard Notice will all contain the address for the Settlement Website. On the website, Settlement Class Members will find important documents and court filings, including the

5

Long-Form Notice, which will contain more detail than the Email Notice and Postcard Notice. A copy of the Long Form Notice is attached to the Settlement Agreement as Exhibit C.

### c. Settlement Website & Toll-Free Telephone Number

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class Members to obtain notice of, and information about, the Settlement. Agreement § III.B.3. The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Class Notice Date. *Id.* The Settlement Website will include an online portal to file Claim Forms, hyperlinks to the Settlement Agreement, the operative complaint, the Postcard Notice, the Preliminary Approval Order, the fee petition, and other such documents as Class Counsel and counsel for Defendant agree to post or that the Court orders be posted on the Settlement Website. These documents will remain on the Settlement Website at least until Final Approval. *Id.*

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries. Agreement § III.B.4.

### 4. Claims Process

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily claim their portion of the Settlement Fund. *See* Declaration of Jeffrey Pirrung ("Class Admin. Decl.") ¶¶ 6-13; *see also* Declaration of Ryan L. McBride ("McBride Decl.") ¶ 30. Settlement Class Members will make a claim by submitting a valid Claim Form to the Claims Administrator, which will then be evaluated for timeliness and completeness. A copy of the Claim Form is attached to the Settlement Agreement as Exhibit A. Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class Members: (1) name; (2) current address; (3) the cellular telephone number(s) at which Defendant allegedly contacted them; (4) an affirmation under penalty of perjury that the Settlement Class Member is a current or former member of an Aetna health plan and received one or

6

more prerecorded voicemails from Defendant on behalf of Aetna to the Settlement Class Member's cellular telephone on or after September 29, 2019, through September 29, 2023, and the Settlement Class member did not give prior express consent; (5) for mailed claim forms, the settlement Class Member's signature; and (6) for Claim Forms submitted via the Settlement Website, the Settlement Class Member's electronic signature. Agreement § III.C.1.

Only one valid claim form will be honored per Settlement Class member, regardless of the number of calls or prerecorded voicemails the Settlement Class Member received. Defendant shall have the right to review and research the submitted claim forms and to suggest denial of claims if Defendant has a good faith belief that such claims are improper or fraudulent. Any suggestion of denial of claims shall be provided to Class Counsel in writing. If the Parties cannot agree upon which claims should be denied, then they shall submit the issue to the Court for determination at final approval. *Id.*

Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to automatically receive a payment by check for $23.00. All claim criteria shall be strictly enforced. Untimely Claim Forms will be rejected and those Settlement Class Members will not receive a Settlement Fund Payment. The administrator shall not receive any incentive for denying claims. Agreement §§ III.C.4. At least fifteen (15) days before the Final Approval Hearing, the Administrator shall provide Class Counsel and Counsel for Defendant the Settlement Class Payment List. Agreement § III.C.5.

### 5. Allocation of the Settlement Fund Payments

Each Settlement Class member who timely files with the Settlement Administrator a valid Claim Form shall receive a cash distribution payable by check or digital payment of $23.00. Claim Settlement Payments will be sent to Settlement Class Claimants at the address or digital payment system they submitted on their Claim Form within 21 days following the Effective Date. Agreement § III.F.1.

### 6. Opt-Out Procedures

Settlement Class Members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written Request for Exclusion to the Settlement Administrator at the address designated in the Class Notice. Settlement Class Members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendant, subject to any defenses that Defendant may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. Agreement § III.D.1. A Settlement Class member must opt-out of the Settlement Class by the Opt-Out Deadline, which is 30 days prior to the Final Approval Hearing. Agreement § I.X. The Settlement Administrator will retain a copy of all requests for exclusion and will provide copies of any such requests to counsel for the Parties on a weekly basis and, at least 15 days before the Final Approval Hearing, the Administrator will provide Class Counsel and Counsel for AbleTo with a list of all timely Requests for Exclusion along with copies of such Requests for Exclusion. Agreement § III.D.3.

### 7. Objection Procedures

Settlement Class Members who wish to file an objection to the Settlement must do so in writing no later than 120 days after Preliminary Approval. Agreement § I.W. Pending Court approval, for an objection to be considered by the Court, it must include the following:

a.  the name of the Action;

b.  the objector's full name, address, and telephone number;

c.  an explanation of the basis on which the objector claims to be a Settlement Class Member;

d.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e.  the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case

8

in which the objector has made such an objection, and a copy of any orders related to or ruling on the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.  a copy of any orders related to or ruling on counsel's or the counsel's law firm's prior objections made by individuals or organizations represented by that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years the objector's counsel;

h.  any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

i.  the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

k.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

l.  the objector's signature (an attorney's signature is not sufficient).

Agreement § III.E.2.

### 8. Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members agree to the Release as defined in Section V of the Agreement.

9

### 9.  Class Counsel Fees and Expenses

Defendant has agreed not to oppose Class Counsel's request for attorneys' fees *and* expenses of up to $1,625,000. Agreement § II.D.1. The Court should consider whether to grant or deny this award separate and apart from its consideration of the fairness and reasonableness of the Settlement.

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Proposed Class Should be Certified

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. Certification of the proposed Settlement Class will allow issuance of the notice of the Settlement and inform Settlement Class Members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. As Plaintiff has already briefed the issue of Class Certification, he incorporates that analysis herein. (Doc. 70, 116). Certification is appropriate under Rules 23(a) and 23(b)(3).

"A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Diakos v. HSS Systems, LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). As with all class certification, "the Court must find that the prerequisites...under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met." *Id.* As a "purpose behind class actions is to eliminate the possibility of repetitious litigation and provide small claimants the means of obtaining redress for claims too small to justify individual litigation...doubts regarding the propriety of class certification should be resolved in favor of certification." *Id.* (citing *Singer v. AT&T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998)). The class action vehicle as a means of "deterring wrongdoing" also favors class certification. *Id.* "Confronted with a request for settlement-only class certification, a district court

need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 1. Numerosity

Numerosity is satisfied with a putative class of 1,373,344 persons who received prerecorded voice messages from Defendant. These persons are located across the country. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

### 2. Commonality

Commonality require that the "common contention must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, there are multiple questions of law or fact common to the class—centering on Defendant's use of prerecorded voicemails to reach Aetna health plan members—that are common to the Settlement Class. These questions, including whether Defendant can meet its burden of showing it obtained prior express consent or whether the calls constitute telemarketing, generate common answers. Indeed, Plaintiff has alleged that Defendant's policy is nearly identical across all Settlement Class Members.

### 3. Typicality

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Here, Plaintiff is typical of absent Settlement Class Members because he is an Aetna health plan member who

11

received Defendant's prerecorded voicemails and suffered the same injury. Furthermore, the process by which Defendant received contact information for Plaintiff and Settlement Class Members from Aetna is identical. Additionally, Plaintiff and the Settlement Class Members will all benefit from the relief provided by the Settlement Agreement. Accordingly, the typicality requirement is satisfied.

### 4.   Adequacy

"The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Here, Plaintiff and Plaintiff's counsel's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. *See* Declaration of Abbas Kazerounian ("Kazerounian Decl.") ¶ 7; *see also* McBride Decl. ¶ 7; *see also* Declaration of William Howard ("Howard Decl.") Howard Decl. ¶ 5. Furthermore, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. *See* Kazerounian Decl. ¶¶ 37-73; *see also* McBride Decl. ¶¶ 38-54; *see also* Howard Decl. ¶¶ 34-52. Class Counsel devoted substantial time and resources to vigorously litigate this Action. *See* Kazerounian Decl. ¶¶ 12-21, 75; *see also* McBride Decl. ¶¶ 12-20; *see also* Howard Decl. ¶¶ 11-18. Additionally, Plaintiff has devoted substantial time to the case and does not have any conflicts with the Class Members of Class Counsel. *See* Declaration of Michael Sessa ("Sessa Decl.") ¶¶ 8, 11.

12

### 5.   Predominance and Superiority

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. GM Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (citing *Babineau v. Fed. Express Corp.*, 567 F.3d 1183, 1189 (11th Cir. 2009)). However, "it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). .

Here, Plaintiff satisfies the predominate requirement because liability questions to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. The principal mechanism by which Defendant is alleged to have violated the rights of Plaintiff and Settlement Class Members appears the same across all members. Furthermore, resolution of over a million claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### B.   The Settlement Satisfies the Criteria for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be settled, notice to the Class must be given in the manner directed by the court, and judicial approval must be obtained. As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in

13

favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.'").

Only once a court decides a class should be certified does it analyze whether the proposed class settlement is "fair, reasonable, and adequate." *Berry v. Refresco Bevs. United States Inc.*, 2025 U.S. Dist. LEXIS 110902, at *8-9 (M.D. Fla. June 11, 2025) (citing Fed. R. Civ. P. 23(e)(2)). To do so, the Federal Rules guide the Court to analyze whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, Courts in the 11th Circuit are meant to consider:

> (1) the likelihood of success at trial; (2) the range of possible; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 (the "*Bennett* factors"). Still, the standard for granting preliminary approval is low; a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, stated differently, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting Manual for Complex Litigation § 1.46 at 62, 64-65 (1982)); *see also* Newberg on Class Actions § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of

14

the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

This Court should take the first step in the process and grant Preliminary Approval of the Settlement Agreement. The Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Indeed, these negotiations occurred after years of discovery and contentious litigation. And although Plaintiff and Class Counsel believe that the claims asserted are meritorious, Defendant argues that the claims are unfounded and has shown a willingness to vigorously litigate. Nevertheless, the parties concluded that the benefits of the Settlement outweigh the risks and uncertainties of continued litigation, including but not limited to, the risks, time, and expenses associated with completing trial and any appellate review.

**1. The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[2] *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

Here, the Settlement is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. *See* McBride Decl. ¶ 23; Howard Decl. ¶ 20; Declaration of Abbas Kazerounian ¶ 23. For almost two years, the parties have discussed the possibility of a settlement

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

15

and resolution of this case. *See* McBride Decl. ¶ 21. While the parties' positions on settlement initially differed, the prolonged and extensive discovery proceedings slowly narrowed that gap. Indeed, the parties participated in three separate mediations (Doc. 33, 119, 125), and filed at least *thirteen* substantive briefs with this Court (Doc. 49, 51, 70, 79, 81, 83, 95, 97, 106, 108, 110, 116, 122) before an agreement could be reached.

Moreover, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. McBride Decl. ¶ 38-54; Kazerounian Decl. ¶ 37-73; Howard Decl. ¶ 34-52. In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. *Id.* As detailed above, Class Counsel conducted a thorough analysis of Plaintiffs' claims and engaged in multiple rounds of discovery with Defendant and third parties. McBride Decl. ¶ 12. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### 2.   The Settlement is Fair, Adequate and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

#### a.   *Likelihood of Success at Trial*

Class Counsel is confident in the strength of Plaintiffs' case but also pragmatic in their awareness of the various defenses available to Defendant and the risks inherent in trial and post-judgment appeal. McBride Decl. ¶ 22. The success of Plaintiff's claims turns on questions that

were raised at summary judgment and that would be raised at trial and during an inevitable post-judgment appeal. Furthermore, the Court has not yet ruled on Plaintiff's Motion for Class Certification. While Counsel is confident in the propriety of class certification, its question poses uncertainty for resolution of Class-related claims at trial. Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. McBride Decl. ¶ 35.

Even if Plaintiffs and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members, without further delay.

>    b.  *Range of Possible Recovery and the Point on or Below the Range of Recovery*
>        *at Which a Settlement is Fair, Adequate and Reasonable*

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial…the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $23.00 made available to Settlement Class Members here is reasonable, given the amount of potential Class Members (1,373,400 people). Taking these figures into account,

Defendant is offering to potentially pay a total of $31,588,200 to the Class Members. Courts have granted class settlements for that much and less. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1374 (S.D. Fla. 2007) (granting National Class Members "phone cards with a face value of approximately $10 to $12—with a 10 cent per-minute charge to use the cards"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043-44 (S.D. Cal. 2015) ("Although Class Members are only expected to recover approximately $13.75, the Court finds that in light of the large number of Class Member claimants and high claims rate, the amount of the Settlement Fund weighs in favor of approving the Settlement"); *Rose v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) (granting final approval where "claimants will receive an average recovery of between $20 to $40"). Furthermore, the Settlement is reasonable based on the complexity of the litigation, and the significant risks and barriers that loomed in the absence of settlement, including but not limited to Plaintiff's Motion for Class Certification, Cross-Motions for Summary Judgment, Plaintiff's Motion to Designate an Expert, as well as appellate review following a final judgment.

There can be no doubt that this Settlement is a fair and reasonable recovery for considering Defendant's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class Members would face absent a settlement. McBride Decl. ¶ 35.

### c. Complexity, Expense and Duration of Litigation

Plaintiff filed this case in 2023 and proceedings have lasted for nearly two years. The parties have no doubt spent considerable expense based on the alleged strength and defenses of their respective positions. Additionally, given the staggering amount of individuals implicated, traditional means for handling claims would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be

18

impracticable. Thus, Settlement is a fair and efficient vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner. McBride Decl. ¶ 37.

### d. *The Substance and Amount of Opposition to the Settlement*

As the potential Settlement has not yet been made public, assessment of this factor is premature. However, based on case precedent and the amount each class member will received, Plaintiff does not expect much opposition to the Settlement.

### e. *Stage of Proceedings*

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiff had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

The Parties reached this Settlement only after years of discovery, including three separate depositions, and multiple rounds of written requests, including a Motion to Designate Expert, a motion for class certification, and pending cross-motions for summary judgment. Furthermore, the parties have thoroughly briefed their respective positions. As a result, Class Counsel is well-positioned and confident in evaluating the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal. McBride Decl. ¶ 22; *see Diakos v. HSS Sys., LLC*, 2016 U.S. Dist. LEXIS 189153, at *12-13 (S.D. Fla. Feb. 4, 2016) ("This is not a class action that was settled before the parties fully understood the complexities of the litigation. All of the issues were fully ventilated—and unresolved—through the pending motions. This final *Bennett* factor supports a finding by this Court that the proposed settlement is fair, adequate and reasonable and final approval should be given.").

## A. The Court Should Approve the Proposed Notice Program

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of

19

whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice program satisfies all these criteria. As recited in the Settlement Agreement and above, the Notice Program will inform Settlement Class Members of the substantive terms of the Settlement. *See* Class Admin. Decl. generally; *see also* Agreement § III.B. It will advise Settlement Class Members of their options for remaining part of the Settlement Class, objecting to the Settlement, opting-out of the Settlement, and how to obtain additional information about the Settlement. *See* Class Admin. Decl. ¶¶ 6-13. The Notice Program is designed to reach a high percentage of Settlement Class Members and exceeds the requirements of Constitutional Due Process. *Id.* Therefore, the Court should approve the Notice Program and the form and content of the Notices.

## B. Proposed Schedule of Events

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. Class Counsel proposes the following schedule:

| Event | Date |
|---|---|
| Deadline for Completion of Initial Mailed Notice | 60 days after Preliminary Approval |
| Deadline for the Initial Email Notice | 60 days after Preliminary Approval |
| Deadline for filing papers in support of Final Approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses | 15 days prior to the Final Approval Hearing |
| Deadline for opting-out of Settlement and submission of objections | 120 days after Preliminary Approval |
| Responses to Objections | 15 days prior to the Final Approval Hearing |
| The Final Approval Hearing | Approximately 150 days after Preliminary Approval |
| The last day that Settlement Class members may submit a Claim Form to the Settlement Administrator. | 120 days after Preliminary Approval |

## IV. CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (2) grant Preliminary Approval to the Settlement; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices and Claim Form, attached to the Settlement Agreement; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiff as Class Representative; (6) appoint as Class Counsel the law firms and attorneys listed in Section I.I of the Agreement; and (7) schedule a Final Approval Hearing. A Proposed Preliminary Approval Order is attached hereto as Exhibit E.

Dated: August 8, 2025

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**
/s/ Abbas Kazerounian
Abbas Kazerounian, Esq.
Admitted Pro Hac Vice
ak@kazlg.com
245 Fischer Ave, Suite D1
Costa Mesa, CA 92626

/s/ Ryan L. McBride
Ryan L. McBride, Esq.
Florida Bar No. 1010101
ryan@kazlg.com
2221 Camino Del Rio S, Suite 101
San Diego, CA 92108

*Attorneys for Plaintiff*

**THE CONSUMER PROTECTION FIRM**
/s/ Billy Howard
William ("Billy") Howard, Esq.
Florida Bar No. 103330
billy@theconsumerprotectionfirm.com
401 East Jackson St., Suite 2340
Tampa, Florida 33602

## CERTIFICATE OF SERVICE

I HEREBY CETIFY that on August 8, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Ryan L. McBride
Florida Bar No. 1010101
*Counsel for Plaintiff*

22